Filing # 93902986 E-Filed 08/08/2019 06:36:16 PM

IN THE CIRCUIT COURT OF THE
TWENTIETH JUDICIAL CIRCUIT IN
AND FOR COLLIER COUNTY

KURT ANDERSON, Individually and on
behalf of all others similarly situated,

      Plaintiff,                        CLASS REPRESENTATION

v.

ALLSTATE INSURANCE COMPANY,

      Defendant.

_____/

## PLAINTIFF KURT ANDERSON'S CLASS ACTION COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

      Plaintiff Kurt Anderson ("Plaintiff") on behalf of himself and all others similarly situated, files this Class Action Complaint against Allstate Insurance Company ("Defendant" or "Allstate"), and asserts upon personal knowledge as to his own acts and status, and upon information and belief as to all other matters, the following allegations:

### I.    NATURE OF THE ACTION

      1.     This is a Class Action lawsuit by Plaintiff Anderson, who was an insured first-party total loss claimant under Allstate's policy of insurance (the "Policy") for private passenger auto ("PPA") physical damage. The Policy insuring Plaintiff has the same material terms as the policies ("Policies") insuring all putative class members.

      2.     The Policies require payment of actual cash value ("ACV") on total loss claims. Allstate acknowledges that its pays ACV on first-party total loss claims in its website: "Your insurer will issue payment for the actual cash value of the totaled vehicle, minus your deductible on your comprehensive or collision coverage." (Ex. E, https://www.allstate.com/tr/car-insurance/what-if-car-totaled.aspx (accessed 8/7/09)).

3.      Florida courts have held that ACV includes the replacement cost minus depreciation. *Trinidad v. Fla. Peninsula Ins. Co.,* 121 So. 3d 433, 443 (Fla. 2013) ("As we have explained, actual cash value is defined as replacement cost minus depreciation.").

4.      Consistent with this obligation to pay replacement cost, Allstate pays the costs to replace total loss vehicles on the great majority of Florida first-party total loss claims. For the majority of claims, Allstate pays sales tax based on the value of the total loss vehicle ("ACV Sales Tax"), title transfer fees ("title fees"), and license plate registration transfer fees ("registration fees").

5.      Allstate pays ACV Sales Tax, title fees, and registration fees on the majority of first-party total loss claims because those fees are mandatory costs imposed by Florida law on the replacement of any total loss vehicle. When providing coverage for those majority of first-party total loss claims, Allstate determines the price of a vehicle of like, kind, and quality as the total loss vehicle, and adds the mandatory fees associated with the purchase and replacement of the vehicle. Those mandatory fees are ACV Sales Tax, title fees, and registration fees, which are part of the actual cash value of the vehicle.

6.      Allstate did not pay Plaintiff these mandatory replacement costs on his first-party total loss claim even though Plaintiff has the exact same policy provisions relating to total loss coverage as those first-party total loss claimants who *did receive* the mandatory replacement fees.

7.      Allstate valued Plaintiff's total loss vehicle the exact same way as it valued the other class members who received coverage for ACV Sales Tax, title fees, and registration fees. The only difference was that Allstate *excluded* from Plaintiff's *coverage* all amounts for ACV Sales Tax, title fees, and registration fees.

8.      Allstate can point to no Policy provision that permits it to exclude from Plaintiff's coverage ACV Sales Tax, title fees, and registration fees.

9.      When calculating Plaintiff's premium, Allstate determined Plaintiff's and putative class members' premiums in the same manner as the premiums calculated for those claimants who received coverage for ACV Sales Tax, title fees, and registration fees.  In other words, Allstate did not charge Plaintiff and other putative class members a lesser premium based on the provision of lesser coverage (not including ACV Sales Tax, title fees, and registration fees).  While charging Plaintiff the same premium as the majority of other first-party total loss claimants, Allstate provided less coverage.

10.      Allstate breached its Policy requiring it to pay Plaintiff and putative class members for vehicle replacement on covered total losses by not paying ACV Sales Tax, title fees, and registration fees, which are mandatory replacement costs under Florida law, for all vehicles with comprehensive and collision coverage.

11.      This lawsuit is brought on behalf of Plaintiff, and a class of Florida insureds who were not paid ACV Sales Tax, title fees, and registration fees as part of the ACV of their first-party total loss claims

12.      Liability and damages in this Class Action involve a coverage dispute with material issues solely related to Policy interpretation and include no disputed issues of fact relating to vehicle valuation.  Title fees and registration fees are the same regardless of vehicle valuation.  Sales tax is simply the sales tax percentage applied to the vehicle value determined by Allstate.  Plaintiff does not dispute the vehicle value determined by Allstate.  The only dispute is whether ACV Sales Tax, title fees, and registration fees are covered under the Policies and must be paid to Plaintiff and putative class members.

## II.     JURISDICTION AND VENUE

13.     The Circuit Court has jurisdiction over this lawsuit because the amount in controversy exceeds $15,000.00, exclusive of interest, costs and attorney's fees.

14.     Venue is proper in this Court because the cause of action accrued in this county. Fla. Stat. Ann. § 47.051.

15.     Plaintiff believes that venue also is proper in this Court because Allstate, a foreign corporation, has agents or other representatives in this County.  Fla. Stat. Ann. § 47.051.

## III.     THE PARTIES

### A.  Named Plaintiff

16.     Plaintiff Anderson is an adult who, at all relevant times, resided in and was domiciled in Collier County, Florida.  Plaintiff Anderson's individual claims in this lawsuit arise from the total loss of his vehicle, which was covered by the Policy issued by Allstate.

### B.  Allstate

17.     Allstate is a foreign insurance company.  Upon information and belief, its principal place of business is in Northbrook, Illinois, at 2775 Sanders Road, Northbook, IL 60062-6127.

18.     Allstate's Florida registered agent for service of process is the Chief Financial Officer, Florida Department of Financial Services, 200 E. Gaines Street, Tallahassee, Florida 32399.

19.     In 2016, Allstate collected over $386 million in PPA insurance premiums in Florida. (*See* Florida Office of Insurance Regulation Annual Report 2017).

## IV.     FACTS

### A.  Allstate Issued a PPA Physical Damage Policy to Plaintiff.

20.     Plaintiff Anderson entered a PPA physical damage Policy agreement to be insured

by Allstate under Policy form AU109-2 with amendatory endorsement AU10766-5, which was in full force and effect on February 17, 2018. (Exs. A, B, Policy forms; Ex. C, Declarations Page).

21.     Plaintiff Anderson leased and insured a 2017 Infiniti Q60 on February 17, 2018.

22.     The Policy provided physical damage coverage for Plaintiff Anderson's 2017 Infiniti Q60, VIN JN1EV7EK6HM361959 (the "Anderson Insured Vehicle"). All material terms of Plaintiff's insurance Policy are set out at Exhibit A and Exhibit B. A copy of the Policy declaration for Plaintiff is attached hereto as Exhibit C. The remaining policy forms shown on the declaration are attached hereto as Exhibit D.

23.     Upon information and belief, Allstate has issued Florida PPA physical damage Policies under policy form AU109-2 since April, 2002, and the amendatory endorsement AU10766-5 since April, 2016.

24.     Each Florida PPA physical damage policy issued by Allstate at any time during the period five (5) years before the filing of this lawsuit through the present has material policy terms relating to coverage for total loss claims that are the same as the Policy that insured Plaintiff's total loss claim.

**B. The Policy Requires Allstate to Pay ACV.**

25.     The Policy provides comprehensive and collision coverage with a coverage limit of ACV, under the following terms:

> **Part V**
> **Protection Against Loss To The Auto**
>
> The following coverages apply when indicated on the Policy Declarations.
>
> **Auto Collision Insurance**
> **Coverage DD**
> If a premium is shown on the Policy Declarations for **Auto Collision Insurance, Allstate** will pay for direct and accidental loss to **your insured auto** or non-owned

**auto** (including insured loss to an attached trailer) from a collision with another object or by upset of that **auto** or trailer.

(Ex. A, Policy form AU 109-2 at 20[1]) (emphasis in original).[2]

    26.    The Policy provides as follows relating to comprehensive coverage:

**Auto Comprehensive Insurance**

**Coverage HH**
If a premium is shown on the Policy Declarations for **Auto Comprehensive Insurance, Allstate** will pay for direct and accidental loss to **your insured auto** or non-owned **auto** (including insured loss to an attached trailer) not caused by collision. Loss caused by missiles, falling objects, fire, theft or larceny, explosion, earthquake, windstorm, hail, water, flood, malicious mischief or vandalism, and riot or civil commotion is covered. Glass breakage, whether or not caused by collision, and collision with a bird or animal is covered.

(Ex. A, Policy form AU 109-2 at 20-21)

    27.    There is no difference, for purposes of the duty to pay ACV on a first-party total

loss claim, between a collision total loss claim and a comprehensive total loss claim.

    28.    The Policy defines an insured auto in relevant part, under the PPA physical damage

section as follows:

**Additional Definitions Under Part V**
**The following definitions apply throughout Part V of the policy.**
**….**

3. "**Insured Auto**" means:    a.    Any **auto** described on the Policy Declarations. This includes the four wheel private passenger **auto** or **utility auto** with which **you** replace it if **you** notify **Allstate** within 30 days of the replacement and pay any additional premium.
….
(Ex. A, Policy form AU 109-2 at 23).

---

[1] All page numbers referenced in Exhibit A are the page numbers for Personal Auto Policy, AU109-2.
[2] All emphasis in quoted language from the Policy is in the original Policy. The spacing has been changed to format to the page.

29.     The Policies provide the following limit of liability for PPA physical damage

coverage:

> **Allstate's** limit of liability is the least of:

>> 1. the actual cash value of the property at the time of loss, which may include a deduction for deprecation;
>> 2. the cost to repair or replace, as determined by **us**, the property or part to its physical condition at the time of loss using parts produced by or for the vehicle's manufacturer, or parts from other sources, including but not limited to, non-original equipment manufacturers, subject to applicable state laws and regulations;
>> 3. the limit of liability shown on the Policy Declaration applicable to the damaged property; or
>> 4. $500, if the loss is to a covered trailer not described on the Policy Declarations.

> Any applicable deductible amount is then subtracted.

> If repair or replacement results in betterment of the property or part, a reduction for the amount of betterment may be taken subject to the applicable state laws and regulations.

> The maximum **Allstate** will pay for a covered loss to any **custom parts or equipment** is $1,000.

> An **auto** and attached trailer are considered separate **autos**, and **you** must pay the deductible, if any on each.  Only one deductible will apply to any **auto** with a mounted **camper unit**.  If unmounted, a separate deductible will apply to the **auto** and **camper unit**.

> When more than one coverage is applicable to the loss, **you** may recover under the broadest coverage but not both.  However, any Sound System Coverage deductible will always apply.

(Ex. B, Amendatory Endorsement, at 18-19).

**C. The Replacement Cost For A Total Loss Includes Applicable ACV Sales Tax, Title Fees and License Plate Transfer Fees.**

30.     The Policy does not define ACV.

31.     ACV reasonably means the cost to replace a total loss vehicle minus depreciation. This definition has been accepted and applied by Florida courts.

32.     Upon information and belief, consistent with the duty to pay replacement cost, Allstate on over 50% of all claims, pays ACV Sales Tax, title fees, and registration fees as part of the coverage provided by the Policies on first-party total loss claims.

33.     There is nothing in the Policies that permits Allstate to exclude coverage for ACV Sales Tax, title fees, and registration fees on Plaintiff's and putative class members' first-party total loss claims.

34.     Defendant's Policy does not unambiguously exclude from coverage ACV Sales Tax, title fees, and registration fees from the coverage.

35.      Courts applying Florida law have held that sales tax is part of ACV unless unambiguously excluded from the insurance policy. *Mills v. Foremost Ins. Co.,* 511 F.3d 1300, 1305 (11th Cir. 2008) (motor home case applying Florida law) (holding that ACV includes sales tax unless unambiguously excluded from policy definition, and – absent policy language to the contrary – there is no condition precedent that an insured use coverage funds to purchase replacement property before being entitled to sales tax component of ACV); *see also Bastian v.USAA et al*, 150 F. Supp. 3d 1284 (M.D. Fla. 2015) (sales tax part of ACV for replacement vehicle).

36.     Florida law requires that a minimum of 6% sales tax be paid on every motor vehicle purchased, with the option for counties to charge an additional local discretionary sales tax of up to 2.5% on the first $5,000 of the motor vehicle purchase.

37.     Sales tax is mandatory on the replacement of any total loss vehicle.

38.     Under Florida law, a person cannot purchase or otherwise acquire a vehicle without having title issued in the name of the acquirer or purchaser. Fla. Stat. Ann. § 319.21(3).

39.     A person cannot operate a vehicle without having the vehicle properly titled.  Fla. Stat. Ann. § 319.34.

40.     A person has no legal interest in a motor vehicle without having title properly issues. Fla. Stat. § 319.22(1).

41.     The Florida mandatory minimum cost (the title fee) to have title issued on a replacement vehicle in the name of an acquirer or purchaser is a minimum of $75.25 under Florida law.

42.     Title fees are mandatory on the replacement of any total loss vehicle.

43.     Florida law requires that all vehicles operated on public roads have a registered license plate. *See, e.g.*, Fla. Stat. Ann. § 320.0609; *see also,* Fla. Stat. Ann. § 320.02 ("every owner or person in charge of a motor vehicle that is operated or driven on the roads of this state shall register the vehicle in this state.").

44.     The Florida mandatory minimum cost (the registration fee) in Florida to transfer license plate registration on a replacement vehicle is a minimum of $4.10.

**D. Plaintiff Anderson Suffered a Total Loss and Was Not Paid ACV Sales Tax, Title Fees or Plate Registration Fees as Required by the Policy.**

45.     On or about February 17, 2018, Plaintiff Anderson's Insured Vehicle was involved in a collision that rendered the vehicle a total loss.

46. Plaintiff Anderson was entitled to coverage of ACV for his total loss under the Policy.

47. Allstate determined that Plaintiff Anderson' vehicle was a covered total loss. (Ex. F Total Loss Letter).

48. Allstate used third-party-vendor CCC One Information Services, Inc. to create Market Valuation Reports for Plaintiff's and all putative class members' claims. (Ex. G, Market Valuation Report).

49. The Market Valuation Report provided for a Base Vehicle Value for Plaintiff's vehicle of $35,875.00 with a condition adjustment of $3,960.00 for an adjusted vehicle value prior to the deductible of $39,835.00. (Ex. G, Market Valuation Report). The report noted "[t]he total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account." *Id*.

50. Allstate paid on Plaintiff Anderson's behalf for his total loss in the amounts that are set out in a total loss letter provided by Allstate:

| | |
|---|---|
| Comparable Vehicles | $[0.00] |
| Condition Adjustments | $[0.00] |
| Actual Cash Value | $[39835.00] |
| Sales Tax | $[0.00] |
| License fee | $[0.00] |
| Salvage Value | $[0.00] |
| Total | $[39835.00] |
| Deductible | $[500.00] |
| **Net Total** | ${39335.00} |

(Ex. F, Total Loss Letter).

51. Plaintiff Anderson does not challenge the vehicle valuations set forth in the Market Valuation Report.

52.     Plaintiff Anderson's total loss claim was adjusted like many other total loss claims for which Allstate pays ACV Sales Tax, with the exception being that Allstate decided that Plaintiff Anderson's claim does not include coverage for ACV Sales Tax, title fees, and registration fees. The Policy terms do not support providing Plaintiff with lesser coverage than other first-party total loss claimants who suffered total losses.  Like all of those total losses where Allstate paid ACV Sales Tax, Plaintiff paid premiums to insure his total loss vehicle, and his vehicle was listed on the declarations page.

53.     Plaintiff asserts only a coverage issue—whether the Policy requires Allstate to include ACV Sales Tax, title fees, and registration fees that are mandated by the Policy language as well Florida law on the purchase of any replacement vehicle. The amount covered by the Policy for title fees and registration fees are the same regardless of the valuation on the total loss vehicle. The amount covered for sales tax is easily calculated based on the valuations from the Market Valuation Report.

54.     Allstate issued two payments under the collision coverage.  One payment was made to Nissan Motor Acceptance Corporation, in the amount of $39,335.00. A second was to Plaintiff in the amount of $333.26, but Allstate failed to identify the reason for the payment.

55.     Allstate did not pay any amounts for ACV Sales Tax, title fees, or registration fees.

56.     Allstate failed to pay the full ACV on Plaintiff's claim because the payments did not include the ACV Sales Tax of $2,440.10[3], a minimum of $75.25 in title fees, and a minimum of $4.10 in registration fees.

---

[3] Collier County applies a local discretionary sales tax of 1 % on the first $5,000.  Thus, the amount due Plaintiff under the Policy for ACV Sales Tax is as follows: ($39,835 x .06 = $2,390.01) + ($5,000 x .01 = $50) =  $2,440.10.

57.     Plaintiff was damaged by the failure of Allstate to pay ACV Sales Tax, title fees, and registration fees.

## V.  CLASS REPRESENTATION ALLEGATIONS

**A.  Particular Provisions of Florida Rule of Civil Procedure 1.220(b) Under Which the Claim is Maintainable on Behalf of the Putative Class.**

58.     Plaintiff's claims are maintainable on behalf of the putative class pursuant to Florida Rule of Civil Procedure 1.220(b)(3).

**B.  The Questions of Law or Fact That are Common to the Claims or Defenses of Plaintiff and the Claims or Defenses of Each Putative Class Member.**

59.     Common questions of law and fact exist and predominate over any question affecting only individual class members.  Because the issues in this case turn on the interpretation of the Policies—an insurance contract with language that is common to all putative Florida class members and Defendant—this case is especially well-suited to class adjudication. Allstate and all members of the putative class are bound by the same material terms of policy form AU109-2 and AU10766-5, and the central issues in the case all involve interpretation of the same material and controlling terms.  These common legal and factual questions, which exist without regard to the individual circumstances of any putative class member, include, but are not limited to, the following:

a.  Whether the Policies provide coverage for ACV Sales Tax and require Allstate to pay ACV Sales Tax on first-party PPA physical damage total loss claims during the class period;

b.  Whether the Policies provide coverage for title fees and require Allstate to pay titles fees on first-party PPA physical damage total loss claims during the class period; and

    c.   Whether the Policies provide coverage for registration fees and require Allstate to pay registration fees on first-party PPA physical damage total loss claims during the class period.

**C. The Particular Facts and Circumstances that Show the Claims or Defenses Advanced by Plaintiff are Typical of the Claims or Defenses of Each Putative Class Member.**

60.    Plaintiff's claims are typical of the claims of each putative class member. Plaintiff's claims and the claims of each putative class member arise from the same core practice: Allstate's failure to include amounts for ACV Sales Tax, title fees, and registration fees as part of ACV as required by the Policy and Florida law for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the putative class members. Plaintiff suffered the same harm as all the other putative class members: the cost of mandatory ACV Sales Tax, title fees, and registration fees.

**D. The Approximate Number of Putative Class Members, Definition of the Alleged Class, and the Particular Facts and Circumstances Showing Plaintiff Will Fairly and Adequately Protect and Represent the Interests of Each Member of the Putative Class.**

**i. Approximate Number of Putative Class Members.**

61.    The members of the putative class are so numerous that separate joinder of each member is impracticable. Allstate wrote over $386 million in PPA premiums in Florida in 2016. (*See* Florida Office of Insurance Regulation ("FOIR") Annual Report 2017). Of that amount, approximately $199.5 million (51.7%) was paid out on PPA claims. (*See*, FOIR 2016 Voluntary Reporting).[4] Of the approximate $199.5 million in paid claims, approximately $92.7 million (46.5% of claim payments) was paid for physical damage. (*See*, Insurance Information Institute,

---

[4] The FOIR 2017 Annual Report publishes voluntary reporting for private passenger automobile paid losses and reserves for 2014-2016. In 2016, voluntary reporting of paid losses was 51.7% ($8,489,294,857/ $16,400,102,984 = .517) of earned premium.

Facts & Statistics, Private Passenger Auto Ins. Losses, 2006-2015 (hereafter "III Facts & Statistics")).[5, 6]

62.     The average loss paid on a physical damage claim is approximately $2,828. *Id.*[7] Based on this average cost per claim, Allstate had approximately 32,779 physical damage claims in 2016.[8] Total loss claims are approximately 18% of all physical damage claims. (*See* CCC Information Services, Inc., "What's Driving Total Loss Frequency?" (www.cccis.com/whats-driving-total-loss-frequency/) (last accessed 6/5/19) (18% estimated based on total loss percentage

---

[5] The III Facts & Statistics identify private passenger auto insurance losses per 100 car years on a claim frequency and severity of loss (amount paid for claim) for liability (bodily injury and property damage), and physical damage (collision and comprehensive). According to III Facts & Statistics, 46.5% of all PPA losses are attributable to physical damage (as opposed to bodily injury and property damage liability). III Facts & Statistics show that historical liability losses per 100 car years are $28,520.73, which is the sum of bodily injury losses ($15,491.84) and property damage losses ($13,028.89). III Facts & Statistics also show that historical physical damage losses per 100 car years are $24,824.33, which is the sum of historical collision losses ($20,262.50) and comprehensive losses ($4,561.83). Historical losses per 100 car years total $53,345.06, which is the sum of liability losses ($28,520.73) and physical damage losses ($24,824.33). Physical damage losses are 46.5% of all claims ($24,824.33/$53,345.06=.465).

[6] The Insurance Information Institute has been cited and relied on by numerous federal courts for insurance statistics. *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 117 (4th Cir. 2015), *cert. denied,* 137 S. Ct. 53 (2016); *Thompson v. State Farm Fire and Cas. Co.*, 5:14-CV-32 (MTT), 2016 WL 2930958, at *1 (M.D. Ga. May 19, 2016); *Caliber One Indem. Co. v. Wade Cook Fin. Corp.*, 491 F.3d 1079, 1086 (9th Cir. 2007). GEICO cited Insurance Information Institute as a provider of reliable statistics in briefing to the Fourth Circuit in *Calderon. See* Calderon, et al. v. GEICO et al., Nos. 13-2096, 13-2149, US Court of Appeals for the Fourth Circuit (Doc. 21).

[7] *See* III Facts & Statistics. III Facts & Statistics shows historical collision losses per 100 car years is $20,262.50, based on an average claim frequency per 100 car years of 6.05 and an average loss of $3,350 ($3,350*6.05=$20,262.50). The historical comprehensive loss per 100 car years is $4,561.83 based on an average claim frequency per 100 car years of 2.73 and an average loss of $1,671 ($1,671*2.73=$4,561.83). Total collision and comprehensive losses per 100 car years are thus $24,824.33 ($20,262.50 + $4,561.83). To find the average claim loss, one divides the total loss ($24,824.33) by the total claims (6.05 + 2.73): $24,824.33 / (6.05+2.73) = $2,827.94.

[8] $92.7 million (total paid for physical damage claims) / $2,828 (average physical damage claim amount) = 32,779 (total physical damage claims).

of all vehicle ages from chart titled *% of Claims Flagged Total Loss by Vehicle Age*)).[9] Allstate

therefore had approximately 5,900 total loss claims in 2016 alone.[10] Plaintiff estimates that the

putative class includes well over 100 class members who made covered first-party PPA physical

damage total loss claims under Allstate Florida Policies during the class period, and who were not

paid full actual cash value on their claims.

### ii. Class Definition.

63.     Plaintiff brings this action as a class action pursuant to Florida Rule of Civil

Procedure 1.220, on behalf of himself and the following putative class (the "Class"):

> All persons who were insured by Defendant Allstate Insurance Company under a
> Florida policy for private passenger auto physical damage and who suffered a first-
> party total loss of a covered vehicle at any time during the 5 years prior to the filing
> of this lawsuit through the date that any class is certified by this Court, whose claim
> was adjusted by Allstate Insurance Company as a total loss claim, whose claim
> resulted in payment by Allstate Insurance Company of a covered claim, and who
> were not paid all of ACV Sales Tax, title transfer fees, and/or license plate
> registration transfer fees as part of their claim payment.

Excluded from the Class are all officers and employees of Allstate Insurance Company and all of

their affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded

---

[9] CCC Information Services is one of the largest private passenger auto total loss physical damage
valuation providers. CCC Information Services provides total loss valuation software and services
for GEICO and other insurers, such as USAA and GEICO. CCC claims to have "the most claims
data in the industry." www.cccis.com/about-ccc/.

[10] 32,779 (total physical damage claims) * .18 (percent of all physical damage claims determined
to be a total loss = 5,900 (total loss claims).

from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

### iii. Particular Facts and Circumstances Showing Plaintiff Will Fairly and Adequately Protect and Represent the Interests of Each Member of the Class.

64.    Plaintiff is an adequate representative of the proposed Class because his interests do not conflict with the interests of the Class Members he seeks to represent, and Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff's interests are coincident with, and not antagonistic to, absent Class Members' interests because by proving his individual claims, he will necessarily prove the liability of Allstate to Class Members as well.  Plaintiff is also cognizant of, and determined to, faithfully discharge his fiduciary duties to the absent Class Members as their representative.

65.    Plaintiff's counsel are experienced in litigating consumer class actions and complex disputes, and have specific experience successfully litigating similar disputes as class counsel. Plaintiff's counsel do not have any conflict with the interests of the Class and are committed to vigorously prosecuting this action.

### E. The Particular Facts and Circumstances that Support the Conclusions Required of the Court in Determining that the Action May be Maintained as a Class Action Pursuant to the Particular Provision of Civil Procedure Rule 1.220(b).

66.    This action may be maintained as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(3).

67.    Plaintiff's claims are maintainable on behalf of the putative Class pursuant to Florida Rule of Civil Procedure 1.220(b)(3).  The claims and defenses are not maintainable under either subdivision 1.220(b)(1) or (b)(2). The questions of law or fact common to Plaintiff's claims and the claims of the putative Class predominate over any question of law or fact affecting only

- 16 -

individual members of the putative Class, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

**F. This Class Action is the Superior Method for Adjudication.**

68.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, among other things: it is economically impracticable for the putative Class Members to prosecute individual actions due to the small individual recovery compared to the expense of litigating the claim individually; prosecution as a class action will eliminate the possibility of repetitious and redundant litigation; and, a class action will enable claims to be handled in an orderly, expeditious manner. The conduct of this action as a class action presents far fewer management difficulties than individual actions, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

**G. This Class Action Is Manageable.**

69.     This class action is manageable and there are few difficulties likely to be encountered in the management of the claims or defenses on behalf of the Class.  The Class can be readily identified from the Allstate's data and records. All of the information relevant to Plaintiff's and other Class Members' claims is in the possession of Allstate, and accessible. Allstate maintains records of all total loss claims made by their insureds and paid by Allstate, and these records can be used by Plaintiff to identify class members and determine damages.  Plaintiff is unaware of any factor making it undesirable to concentrate the litigation in the present forum.

70.     Because the Policy language is the same, once the legal issues of construction of the insurance contract and the amount of ACV Sales Tax, title fees and registration fees due under the Policy are determined, damages can be determined by a simple mathematic formula for ACV Sales Tax, title fees and registration fees. Damages for ACV Sales Tax, title transfer, and

registration fees can be determined by applying those fees to each putative Class Member's total loss claim during the Class period.

**COUNT I - BREACH OF CONTRACT**
**(on behalf of the Class)**

71.     Plaintiff incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

72.     This Count is brought by Plaintiff on behalf of the putative Class against Allstate.

73.     Plaintiff was a party to the Policy, which is an insurance contract with Allstate.

74.     Each putative Class Member was a party to an insurance policy with identical material terms as the Policy relating to coverage for PPA physical damage total loss claims.

75.     The material provisions of PPA insurance Policies as outlined above, are identical for Plaintiff and all putative Class Members.

76.     The interpretation of all such Policies is governed by common law.

77.     Plaintiff and each putative Class Member complied with all duties under the Policies to entitle them to coverage on their total loss claims, and their claims were determined by Allstate to be covered first-party total losses under the Policies.

78.     Allstate, by paying on the total loss claims, determined that each Plaintiff and each Class Member complied with the terms of their Policies and fulfilled all of their duties that the Policies imposed for them to be paid on their total loss.

79.     The Policies of Plaintiff and each putative Class Member required Allstate to pay

ACV Sales Tax, title fees, and registration fees on their total loss claims.

80.     The amount in title fees due under the Policies is a minimum of $75.25.

81.     The amount in registration fees due under the Policies is a minimum of $4.10.

82.     There are no disputed issues of fact relating to this breach of contract claim.

83.     The sole issues in this breach of contract claim are the judicial determination of whether the Policies required Allstate to include mandatory ACV Sales Tax, title fees, and registration fees as part of the coverage on total loss claims; and if so, the judicial determination of what title fees and registration fees are required.

84.     There is no property to inspect or value. Allstate has valued the vehicle and Plaintiff does not dispute the values stated in the Total Loss Valuation Report. (Ex. F, Total Loss Valuation Report).

85.     It is a judicial determination of whether Allstate breached the Policies by deciding not to pay the ACV Sales Tax, mandatory Florida title fees, and registration fees at issue in this lawsuit.

86.     Allstate asserts that the Policy does not require ACV Sales Tax, title fees, and registration fees to be included. Whether the Policy requires payment of such fees is a judicial determination.

87.     Allstate breached the Policy by failing to include mandatory ACV Sales Tax, title fees, and registration fees on Plaintiff's and putative Class Members' total loss claims. Such fees are reasonably likely to be incurred on the replacement of a total loss vehicle.

88.     Plaintiff and the putative Class Members have suffered monetary damages caused by Allstate's insurance contract breaches.

89.     Plaintiff and the putative Class Members also are entitled to an award of attorney's fees and costs pursuant to § 627.427 Fla. Stat. and all other statutory or contractual provisions allowing for attorney's fees and costs.

90.     Plaintiff, individually and on behalf of all others similarly situated, seeks applicable damages, costs, and attorney's fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the putative Class Members, prays for relief and judgment as follows:

A.      For an order certifying this lawsuit as a class action on behalf of the Class described above;

B.      For an award of compensatory damages as outlined above;

C.      For damages according to proof;

D.      For an award of attorneys' fees as appropriate pursuant to applicable law (including Fla. Stat. § 627.428);

E.      For costs of suit herein incurred;

F.      For both pre- and post-judgment interest on any amounts awarded;

G.      For such other and further relief as the Court may deem proper; and

H.      Trial by jury of all issues triable.

Dated this 8th day of August, 2019.

/s/Tracy L. Markham
Tracy L. Markham
Florida Bar No. 0040126
Southern Atlantic Law Group, PLLC.
2800 N 5th Street, Suite 302
St. Augustine, Florida 32084
Phone: (904) 794 7005
Facsimile: (904) 794 7007

tlm@southernatlanticlaw.com
pleadingsonly@southernatlanticlaw.com

Gordon Van Remmen
Georgia Bar No. 215512
Motion to Appear Pro Hac Vice to be filed
Hall & Lampros, LLP
400 Galleria Parkway, Suite 1150
Atlanta, GA 30339
Phone: (404) 876-8100
Facsimile: (404) 876-3477
gordon@hallandlampros.com